This matter arose out of the installation of a water line by the Board of the Lucas County Commissioners ("board of commissioners"), under the supervision of the Lucas County Sanitary Engineer, Larry Gamble, in Jerusalem Township ("Jerusalem"). The water system installed in Jerusalem included forty-two fire hydrants. Jerusalem's fire equipment and hoses had "National Standard" threads; whereas, the hydrants that were installed in Jerusalem had "New York Central" threads on the two side nozzles of each hydrant. The main nozzle on the hydrants, however, was a standard size.
Frank Dobrosky, Jerusalem Township Fire Chief issued a citation to Gamble for an alleged violation of the Ohio Fire Code ("OFC"). Specifically, pursuant to his authority under R.C.3737.42 and O.A.C. 1301:7-1-05(A) (OFC FM-105.0), Dobrosky cited Gamble with violating OFC F-501.6 for installation of fire protection equipment with fire hose connections that were not compatible with the connections used by the local fire department. Gamble was fined $1,000 and ordered to replace the incompatible fire hose connections with connections that were compatible with the local fire department, within thirty days of the citation.
Gamble and the board of commissioners (collectively referred to as "appellees") appealed the citation to the Ohio Board of Building Appeals ("building appeals board"). The basis of the appeal was that the board of commissioners had exclusive jurisdiction over the fire hydrants installed on the county water line; that OFC F-501.6 had no application to the design or construction of a county water system, including hydrants installed on the water system; and that Gamble is not an individual who owns or controls the property or premises which allegedly violated OFC F-501.6. On November 8, 1996, the building appeals board issued a decision that stated as follows:
 "This matter came up for hearing Thursay [sic], November 7, 1996 on an appeal from Adjudication Order 96002 issued by the Jerusalem Township Fire Department. Said adjudication order involved the premises known as Lucas County Sanitary Engineer's Office.
"* * *
 "The Board having determined that inasmuch as it would not be contrary to the public interest and unnecessary hardship would result if a literal enforcement of the Ohio Basic Building Code and/or the Ohio Fire Code was required, a variance against the adjudication order is denied."
Thereafter, on November 13, 1996, appellees appealed to the Lucas County Court of Common Pleas. Appellees raised the same arguments presented to the building appeals board and added arguments that the decision was flawed, illogical, inconsistent, failed to address the legal arguments before the building appeals board, and that they were denied a meaningful agency review of the issuance of the citation by the building appeals board.
After the appeal to the common pleas court was filed, the building appeals board issued an amended decision on December 11, 1996. In its amended decision, the building appeals board held:
 "Based upon the evidence submitted, the Board upholds the citation and orders the Appellant to install fire hose connections compatible with the Jerusalem Township's Fire Department regulations within 90 days of receipt of this ruling. The Board also orders the fine of $1,000.00 be suspended."
Upon review of the board's decision, the Lucas County Court of Common Pleas reversed the decision of the Board of Building Appeals and held that the board's decision upholding the citation was contrary to law and was not supported by reliable, probative and substantial evidence, as required by R.C. 119.12. The common pleas court reasoned that appellees had not violated the Ohio Fire Code because the hydrants were, in fact, compatible with the connections used by Jerusalem. Although the threads were different, the common pleas court found as follows:
 "The administrative record in this case establishes that adapters are available which allow the fire department's equipment to connect to the side nozzles of the fire hydrants that are part of the County water system. In fact, the record further establishes that the Jerusalem Township Fire Department actually has these adapters and uses them to access the County water system. The County fire hydrants are thus compatible with the Township's fire equipment." (Footnote omitted.)
Jerusalem appeals the decision of the common pleas court and raises the following sole assignment of error:
 "THE LOWER COURT'S DECISION IS NOT SUPPORTED BY A PREPONDERANCE OF RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND IS CONTRARY TO LAW."
In response, appellees argue that the correct standard of review we must apply is "abuse of discretion." According to appellees, the common pleas court's reversal of the decision of the building appeals board was not an abuse of discretion.
The parties disagree about the standard of review that should be applied to this administrative appeal. We find that both parties assert the incorrect standard of review.[1] We find that the correct standard of review is preponderance of the evidence; rather than "reliable, probative, and substantial evidence."
Gamble was cited by Dobrosky pursuant to the authority granted him by R.C. 3737.42. R.C. 3737.43 states, in pertinent part, that if an officer issues a citation under R.C. 3737.42, he shall notify the responsible person of his right to appeal to the State Board of Building Appeals under R.C. 3781.19. R.C. 3781.19
specifies, in pertinent part:
 "The state board of building appeals or a certified municipal or county board of appeals shall render its decision within thirty days after the date of the adjudication hearing. Following the adjudication hearing, any municipal or county officer, official municipal or county board, or person who was a party to the hearing before the municipal or county board of appeals may apply to the state board of appeals for a de novo hearing before the state board, or may appeal directly to the court of common pleas pursuant to section 3781.031 of the Revised Code." (Emphasis added.)
R.C. 3781.031 provides for the standard of review to be applied by the common pleas court:
 "Notwithstanding the provisions of Chapter 119. of the Revised Code relating to adjudication hearings and the proceedings thereon, a stenographic or mechanical record of the testimony and other evidence submitted shall be taken at the expense of the agency; a party adversely affected by an order issued following such adjudication hearing may appeal to the court of common pleas of the county in which he is a resident or in which the premises affected by such order is located; the court in such case shall not be confined to the record as certified to it by the agency but any party may produce additional evidence and the court shall hear the matter upon such record and such additional evidence as is introduced by any party; and the court shall not affirm the order of the agency unless the preponderance of the evidence before it supports the reasonableness and lawfulness of such order and of any rule or regulation of the board of building standards upon which the order of the agency is based in its application to the particular set of facts or circumstances involved in the appeal." (Emphasis added.)
An appellate court's "inquiry is limited to a determination of whether, as a matter of law, there did exist a preponderance of evidence to support the reasonableness and lawfulness of the board's order." Copeland Corp. v. Ohio Dept. ofIndus. Relations, Div. of Factory and Bldg. Inspection (1988),53 Ohio App.3d 23, 26. However, an appellate court's "function does not involve a determination as to the weight of the evidence."Id., citing, In re Annexation of 1,544.61 Acres (1984), 14 Ohio App.3d 231,233. See, also, Plummer v. Waltz (Aug. 17, 1995), Paulding App. No. 11-95-1, unreported.
In this case, the trial court did not review the board's decision under a preponderance of the evidence standard; rather, the court determined whether the board's decision was supported by "reliable, probative and substantial evidence as required by R.C.119.12." The standard relied upon by the common pleas court is a less stringent standard of review than "preponderance of the evidence."[2] Accordingly, because the common pleas court found that there was insufficient evidence to support the board's decision under the less stringent standard codified in R.C. 119.12, it follows that the court would have made the same determination under a preponderance of the evidence standard of review.
We therefore must determine whether, as a matter of law, there existed a preponderance of evidence to support the reasonableness and lawfulness of the board's order. See Copeland,supra. OFC F-501.6 is codified at O.A.C. 1301:7-7-05(B)(6), as follows:
 "(6) F-501.6 Threads: All threads provided for fire department connections to sprinkler systems, standpipe systems, yard hydrants or any other fire hose connection shall be compatible with the connections utilized by the local fire department." (Emphasis added.)
The term "compatible" is not defined in the Ohio Fire Code. Pursuant to O.A.C. 1301:7-7-02(A)(4), terms that are not defined "shall have ordinarily accepted meanings such as the context implies." According to Merriam-Webster's Collegiate Dictionary (1996) 234, "compatible" means "1: capable of existing together in harmony * * * 5: designed to work with another device or systemwithout modification * * *." (Emphasis added.)
Because an adaptor is required to join Jerusalem's hoses to the hydrants, we find that the two items are not "compatible," within the ordinarily accepted meaning, because they are not designed to work with one another without modification. Accordingly, we find that the building appeals board correctly determined that the hydrants were incompatible with Jerusalem's fire equipment. As such, we find that the trial court erred. The board's decision was not against the preponderance of the evidence, in this regard. Appellant's sole assignment of error is therefore found well-taken.
Nevertheless, appellees make several other arguments concerning the alleged incorrectness of the decision of the building appeals board. Specifically, appellees argue that the board's amended decision was unlawful; that the decision was not supported by reliable, probative and substantial evidence; that the Ohio Fire Code does not apply to a county water supply system; and that the decision of the board was unlawful in that the citation was issued to an improper party.
We agree that the building appeals board was divested of jurisdiction to enter subsequent rulings once the matter had been appealed to the common pleas court. Generally, once a notice of appeal from a decision of an administrative agency has been filed, the agency is divested of its inherent jurisdiction to reconsider, vacate or modify the decision. Lorain Edn. Assoc. v. Lorain CitySchool Dist. Bd. of Educ. (1989), 46 Ohio St.3d 12, syllabus. In this case, the board's "Amended Decision" was entered after the matter had been appealed to the common pleas court. Accordingly, the building appeals board had no jurisdiction to alter its earlier decision.
Appellees additionally argue that the original decision of the building appeals board, filed November 8, 1996, denied them a meaningful review because the board "literally failed to even address or consider the issues involved in this case." In fact, appellees assert that the board "denied a remedy that was not even requested by the Appellees herein" when the board held that "a variance against the adjudication order is denied."
Furthermore, appellees assert that the board's decision referred to an adjudication order that "involved the premises known as Lucas County Sanitary Engineer's Office." Appellees argue that because there is no evidence in the record that establishes that the hydrants in question were located on the premises of the sanitary engineer's office, the decision "is not supported by reliable, probative and substantial evidence."
R.C. 3781.19 provides that the Board of Building Appeals "may reverse or modify the order of the enforcing agency if it finds that the order is contrary to this chapter and * * * [R.C.3737.42] and any rule made thereunder or to a fair interpretation or application of such laws or any rule made thereunder, or that avariance from the provisions of such laws or any rule madethereunder, in the specific case, will not be contrary to thepublic interest where a literal enforcement of such provisionswill result in unnecessary hardship." (Emphasis added.)
We agree that the decision of the Board of Building Appeals is not thorough and is somewhat poorly worded. Nevertheless, the board clearly denied appellees' appeal of the citation. We further find that, even though a variance was not requested, the board's denial of a "variance" does not establish that the decision was totally without basis. R.C. 3781.19
provides for a variance to be granted if a person is not in compliance with the Ohio Fire Code. In addition to enforcing the literal requirements of the Ohio Fire Code, the board stated that appellees would not be entitled to a variance. We therefore find that the board's decision was issued within the perimeters of R.C.3781.19. As such, we find that the board's decision was not against a preponderance of the evidence simply on the basis that a variance was denied, although none was requested.
We also find that the building appeals board's statement that "[s]aid adjudication order involved the premises known as Lucas County Sanitary Engineer's Office" is not fatal to the board's decision. The decision did not aver that the hydrants were located in the sanitary engineer's office. An assertion to the contrary is specious.
Appellees also assert that the Ohio Fire Code does not apply to a county water supply system. Appellees argue that the purpose of the Ohio Fire Code is to create minimum fire prevention standards in buildings and other structures and for specific premises, and was not intended to apply to a public water system that occupies no structure, or any specific premises. As such, appellees argue that the construction, maintenance and operation of a county public water system is not governed by the requirements of the Ohio Fire Code. Additionally, appellees argue that the Ohio Fire Code is a general statute that applies to a broad range of circumstances; whereas, R.C. 6103.02 is a more specific statutory provision that grants authority to the board of commissioners to construct public water supply systems, which includes fire hydrants. As such, appellees argue that the allegedly more specific statutory provision must prevail over a conflicting general statute.
For the purpose of preserving and promoting the public health and welfare, and providing fire protection, R.C. 6103.02
grants any board of county commissioners the authority to acquire, construct, maintain, and operate any public water supply or water-works system within its county. Further, the board of commissioners "may adopt, publish, administer, and enforce rules for the construction, maintenance, protection, and use of the public water supplies in the county outside of municipal corporations, and of public water supplies within municipal corporations in its county wherever such water supplies are constructed or operated by such board or are supplied with water from water supplies constructed or operated by such board, including the establishment of connections." R.C. 6103.02(A). "Public water supply" is defined in R.C. 6103.01 as "wells, springs, streams, or other sources of water supply, pumping equipment, treatment or purification plants, distributing mains, cisterns, reservoirs, necessary equipment for fire protection, other equipment, and lands, rights of way, and easements, necessary for the proper development and distribution of the supply." (Emphasis added.)
Pursuant to R.C. 3737.82, the fire marshal "shall adopt a state fire code which shall consist of rules relating to all aspects of fire safety." The statute further states that the code "shall include, but not be limited to, rules relating to the movable contents of any building, or class of buildings, the transportation, storage, location, and use of flammable or explosive materials, the procedures to be employed by persons in the event of fire, the installation and location of fireprotection equipment, and other similar matters." (Emphasis added.) The fire marshal must include in the fire code minimum standards of performance for fire protection equipment and fire fighting equipment. R.C. 3737.83(A).
The Ohio Fire Marshal adopted the National Fire Prevention Code. O.A.C. 1301:7-3-01(A). The Ohio Administrative Code further states that the rules adopted by the fire marshal" shall be controlling within the state of Ohio and shall be known as the `Ohio Fire Code,' abbreviated `OFC.'" (Emphasis added.) O.A.C. 1301:7-3-01(B) (OFC FM-108.2).
O.A.C. 1301:7-1-01(B) states that the purpose and intent of the code is "to prescribe minimum requirements and controls to safeguard life, property or public welfare from the hazards of fire and explosion arising from the storage, handling or use of substances, materials or devices and from conditions hazardous to life, property or public welfare in the use or occupancy of buildings, structures, sheds, tents, lots or premises." OFC FM-100.2. The scope of the Ohio Fire Code is set forth at O.A.C.1301:7-7-05(B)(1):
 "(1) FM-501.1 Scope: The provisions of this rule shall govern the installation, operation, maintenance and testing of all new and existing fire protection systems, devices, units and fire safety equipment. * * *" (Emphasis added.)
With respect to design criteria, O.A.C. 1301:7-7-05(B)(2) states that all fire protection systems shall be designed and installed in accordance with the requirements of this code and the building code. OFC FM-501.2.1. In particular, the Ohio Fire Code states with respect to threads on fire protection equipment: "All threadsprovided for fire department connections to sprinkler systems, standpipe systems, yard hydrants or any other fire hose connectionshall be compatible with the connections utilized by the localfire department." (Emphasis added.) O.A.C. 1301:7-7-05(B)(6) (OFC F-501.6).
R.C. 3737.51(A) provides that no person shall knowingly violate any provision of the state fire code or any order made pursuant to it. In addition to the definition in R.C. 1.59, "person" means "the state and any political subdivision of the state, and any other entity, public or private." R.C. 3737.01(E).
Appellees argue that the Ohio Fire Code does not apply to public water systems. We disagree.
The Ohio Fire Code applies to all aspects of fire safety, including the installation and location of fire protection equipment. R.C. 3737.82; and O.A.C. 1301:7-3-01(B). The hydrants installed by the board of commissioners are clearly "fire protection equipment." The Ohio Fire Code further provides that no "person" shall knowingly violate any of the code provisions. R.C. 3737.51(A). The Lucas County Board of Commissioners is a "person" as that term is defined by R.C.3737.01(E). Accordingly, absent any statutory language to the contrary, we find that insofar as the board of commissioners installs fire protection equipment, it is subject to the same rules and regulations as others who install such equipment.
We further find not well-taken appellees' argument that the Ohio Fire Code does not apply to public water systems because it involves no specific premises or structure. The Ohio Fire Code speaks generally of its purpose to safeguard life, property and public welfare. Further, the code does not limit its application merely to buildings or specific premises; rather, the Ohio Fire Code states that it governs the installation of all new and existing fire protection systems, devices, units and fire safety equipment.
Appellees additionally argue, however, that the more specific statute prevails over the more general. Under the rules of construction, R.C. 1.51 provides as follows:
 "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
Moreover, it is an elementary rule of statutory construction that, in the absence of language to the contrary, a specific statute controls over a general provision. Quality Ready Mix, Inc. v.Mamone (1988), 35 Ohio St.3d 224, 226-227.
The board of commissioners is generally granted authority to construct a public water supply system, which includes "necessary equipment for fire protection." R.C. 6103.01
and 6103.02. Whereas, the fire marshal is granted specific authority to adopt rules relating to all aspects of fire safety in order to safeguard life and property from fire and explosion. R.C.3737.82. Further, according to statute, the fire marshal must
institute rules relating to "* * * the installation and location of fire protection equipment * * *." Id.
The issue before us is one of fire safety because fire hydrants that are incompatible with the local fire department's equipment can cause delays and interfere with fire fighting, as testified to before the building appeals board. Accordingly, we find that the more specific grant of statutory authority, R.C.3737.82, relating to the installation of fire protection equipment, prevails over the more general, R.C. 6103.02.
Additionally, insofar as the board of commissioners is granted no authority to issue rules relating to fire safety, we find that the Ohio Fire Code is not in conflict with any express provision of R.C. 6103, et seq. See Kelly v. Accountancy Bd. ofOhio (1993), 88 Ohio App.3d 453, 457 (where there is conflict between an administrative rule and a statute, the administrative rule is invalid). See, also, McAninch v. Crumbley (1981), 65 Ohio St.2d 31,34, ("An administrative rule is not inconsistent with a statute unless the rule contravenes or is in derogation of some express provision of the statute.")
Based on the foregoing we find not well-taken appellees' argument that the Ohio Fire Code is inapplicable to public water supply systems.
Appellees finally argue that Dobrosky unlawfully issued the citation to the wrong party, i.e., Larry Gamble, the Lucas County Sanitary Engineer. Appellees assert that Gamble was not a "responsible person." Instead, appellees assert, the board of commissioners was the responsible party as it had the sole responsibility to acquire, construct, maintain and operate the public water supply system.
We agree that the board of commissioners is granted the authority to acquire, construct, maintain, and operate any public water supply system. However, R.C. 6103.02 also states that "* * * [t]he sanitary engineer, or sanitary engineering department, of such county, in addition to other duties assigned to such sanitary engineer or department, shall assist the board in the performance of its duties under sections 6103.02 to 6103.30 of the Revised Code, and shall be charged with such other duties and services in relation thereto as the board prescribes. * * *" In addition, any construction of the public water supply system "shall be done under the supervision of the sanitary engineer." R.C. 6103.02. Furthermore, the sanitary engineer is granted the authority to "enter upon any public or private property for the purpose of making surveys and examinations necessary for the design or examination of public water supplies, and may make such surveys and examinations." Id. The statute makes it unlawful for any person, firm, or corporation to forbid or interfere with the sanitary engineer's authority. Id.
If the fire marshal, an assistant fire marshal, or a certified fire safety inspector believes that the state fire code has been violated, he shall issue a citation to the responsible person. R.C. 3737.42. "Responsible person" is defined as "the person responsible for compliance with the state fire code, including, but not limited to, the owner, lessee, agent, operator, or occupant of a building, premises, or vehicle." (Emphasis added.) R.C. 3737.01(F). Accordingly, based on the authority granted to the sanitary engineer to supervise the construction of the public water supply system, we find that it was not error for Dobrosky to cite Gamble with violating the Ohio Fire Code. Moreover, to the extent that the board of commissioners was also responsible for violating the Ohio Fire Code with the installation of its public water supply system, we find that the board of commissioners availed itself of these proceedings by making itself a party and appealing the citation to the board, to the common pleas court, and asserting arguments before this court.
In conclusion, we find that the decision of the building appeals board was supported by a preponderance of the evidence. We find that the public water supply system installed by the board of commissioners under the supervision of the sanitary engineer was subject to the Ohio Fire Code. We also find that the hydrants installed in Jerusalem were not compatible with the local fire department's equipment, in violation of the Ohio Fire Code, because an adaptor was required to make use of the hydrants. We further find that the fire marshal correctly issued a citation to the responsible person. Accordingly, we find that the trial court erred in reversing the decision of the building appeals board and hereby order the reinstatement of the board's original decision affirming the citation.
The judgment of the Lucas County Court of Common Pleas is reversed and remanded to the trial court to enter judgment in accordance with this opinion. Costs of this appeal are to be paid by appellees.
JUDGMENT REVERSED.
 Peter M. Handwork, P.J., JUDGE
Richard W. Knepper, J., JUDGE
CONCUR.
James R. Sherck, J., dissents.
[1] Jerusalem argues that R.C. Chapter 2506 applies to this matter. However, we find that the Ohio Board of Building Appeals is not a political subdivision. See Fair v. School EmployeesRetirement System of Ohio (1975), 44 Ohio App.2d 115, 119, (an instrumentality of the state exercising its powers and duties throughout the state, not solely within a geographical subdivision of the state, is not a political subdivision).
[2] Preponderance of the evidence means "the greater weight of evidence." State v. Stumpf (1987), 32 Ohio St.3d 95, 102, quoting, Travelers' Ins. Co. v. Gath (1928), 118 Ohio St. 257,261. See, also, Black's Law Dictionary (5 Ed.Rev. 1979) 1064, ("Preponderance of evidence" means "[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not. * * *") To the contrary, "substantial evidence," for example, means "[s]uch evidence that a reasonable mind might accept as adequate to support a conclusion. * * * Evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. at 1281.